UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| UNITED STATES OF AMERICA, | 2:05-CV-02176-MCE-CMK |
| Plaintiff, | |
| v. | MEMORANDUM AND ORDER |
| MICHAEL CAREY; LEONE CAREY; DOUGLAS CARPA and ROBERT TALBOT (or their successor trustees), as Trustees of the RANCH HOLDING TRUST; MICHAEL BLOOMQUIST (or his successor trustee), as Trustee of the HIDDEN MEADOWS HOLDING TRUST; PAMELA GRAFF; PATRICIA WELCH (aka PATRICIA KOERNER); STATE OF CALIFORNIA FRANCHISE TAX BOARD, and STATE OF CALIFORNIA DEPARTMENT OF INDUSTRIAL RELATIONS, | |
| Defendants. | |

///
///
///
///
///

The United States filed the present action against Michael and Leone Carey ("Careys"); Douglas Carpa and Robert Talbot (both as trustees of the Ranch Holding Trust); Michael Bloomquist (as trustee of the Hidden Meadows Holding Trust); Pamela Graff; and various other defendants, seeking, *inter alia*, to foreclose federal tax liens securing the Careys' federal income tax liabilities, plus penalties and interest, against certain real property located in Redding, Palo Cedro, and in Bella Vista, California.

Presently before the Court is the United States' Motion for Default Judgment against Douglas Carpa and Robert Talbot (as trustees of the Ranch Holding Trust), Michael Bloomquist (as trustee of the Hidden Meadows Holding Trust), and Pamela Graff adjudicating that the Ranch Holding Trust, the Hidden Meadows Holding Trust, and Pamela Graff have no interest in the Palo Cedro, Redding, and Bella Vista Properties.  In conjunction with the United States' Motion for Default Judgment, the government has filed a Motion for Summary Judgment against Michael and Leone Carey declaring that the Careys are the true and beneficial owners of the Palo Cedro, Redding, and Bella Vista properties despite any purported interests held by the foregoing trusts. For the reasons set forth below, the United States' Motions for Default Judgment and for Summary Judgment are GRANTED.[1]

///
///

---

[1] Because oral argument will not be of material assistance, the Court orders this matter submitted on the briefs.  E.D. Cal. Local Rule 78-230(h).

2

**BACKGROUND**

According to the Government's Complaint, a delegate of the Secretary of the Treasury made assessments against the Careys for unpaid federal income taxes, plus penalties and interest, for the 1995 through 2000 tax years. As of November 18, 2004, there allegedly remains due and owing from the Careys, jointly and severally, the sum of $6,473,034.57 on the assessments, plus accrued interest, penalties and other statutory additions as provided by law. Interest has now accrued on the liability, such that as of February 28, 2007, the Careys owed $7,475,470.08. The United Stated contends that, to date, the Careys have neglected, failed, or refused to fully pay the indebted amounts.

The United States alleges that the Careys are the true and beneficial owners of real property located in Palo Cedro, Redding, and Bella Vista, California. The Careys transferred the Palo Cedro and Redding properties to the Ranch Holding Trust administered by Douglas Carpa and/or Robert Talbot. The Bella Vista property is in the Hidden Meadows Holding Trust, administered by Michael Bloomquist. The United States alleges the Trusts are the nominees and/or alter ego's of the Careys.

None of the Defendants has properly answered the Government's Complaint. The filed Answers of Defendants Carpa and Bloomquist were struck by Order of this Court as improper. Defendant Graff's Motion to Dismiss was similarly struck down as defective and a new motion was never filed. On July 31, 2006, the Clerk entered default against Robert Talbot, Douglas Carpa, Michael Bloomquist, and Pamela Graff.

The Careys have been involved in significant litigation with the United States involving the tax years at issue including claims before the United States Bankruptcy Court, the United States Tax Court, and the United States District Court as follows.

**1. United States Bankruptcy Court**

On July 28, 2005, the Bankruptcy Court entered judgment in favor of the United States, finding, *inter alia*, that the Careys' tax debts for the tax years at issue are excepted from discharge under 11 U.S.C. Section 523(a)(1)(C). *See* Undisputed Facts, ¶ 16.

**2. United States Tax Court**

The United States Tax Court found a tax deficiency in the amount of $205,911 and a penalty due in the amount of $41,182 under Section 6662(a) for the tax year 1995. *See* Undisputed Facts, ¶ 18. The United States Tax Court also found a tax deficiency in the amount of $498,933 and penalties due in the amounts of $74,874.99 and $99,786.60 under Sections 6651(a) and 6662(a), respectively for the tax year 1997. *See* Undisputed Facts, ¶ 19. The Tax Court also concluded that the Residential Management Services Trust, Rancho Residential Services Trust, Sunshine Residential Trust, and the Home Services Trust were invalid and sham trusts; that the Careys controlled and dealt with trust property as if it were their own; that income reported by these trusts should be imputed as being income earned by the Careys and not by these trusts;

4

that bank accounts controlled by the Careys paid for the property taxes on the Palo Cedro and Bella Vista properties; and that the Careys resided at the Palo Cedro and Bella Vista Properties as their personal residences.  See Undisputed Facts, ¶ 20.

### 3. United States District Court

The United States has litigated numerous enforcement actions against the Careys in this Court involving their fraudulent use of trusts. *See United States v. Carey*, Case Nos. 2:05-cv-02176; 2:98-cv-01540; 2:98-mc-00289; 2:98-mc-00294; 2:98-mc-00295; 2:98-mc-00296; and 2:98-mc-00297.  Those cases have concluded that enforcement against the Careys of various tax obligations was proper.

### 4. The United States' Requests For Admissions

The United States served the Careys with various discovery requests on July 28, 2006, including its First Request for Admissions.  *See* Undisputed Facts, ¶ 21.  The Careys failed to respond to any of the United States' discovery requests, including its First Request for Admissions.  *See* Undisputed Facts, ¶ 22.  The United States' Request for Admissions included requests that the Careys admit they: (1) are liable for the assessments made against them for the tax years at issue, totaling $6,473,034.57, plus accrued interest, penalties and other statutory additions as provided by law from the dates of assessment; (2) are the true and beneficial owners of the Palo Cedro and Redding Properties despite any purported transfers to the Ranch Holding Trust;

(3) transferred the Palo Cedro and Redding Properties to the Ranch Holding Trust with the intent of hindering, delaying, or defrauding their present and future creditors, including the United States; (4) are the true and beneficial owners of the Bella Vista Property despite any purported interest held by the Hidden Meadows Holding Trust; (5) use the Ranch Holding Trust and the Hidden Meadows Holding Trust as sham entities which lack any purpose beyond shielding assets, including the Palo Cedro, Redding, and Bella Vista properties, from the reach of their creditors and, consequently, that these trusts are the Careys' nominees and/or alter egos. *See* Undisputed Facts, ¶ 23.

**STANDARD**

### 1. Default Judgment

The starting point for considering whether to grant a motion for entry of default judgment is the general rule that default judgments are ordinarily disfavored. *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986). Cases should be decided upon their merits whenever reasonably possible. *Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985). Whether to grant a motion for default judgment is within the Court's discretion. *Eitel*, 782 F.2d at 1472. The Ninth Circuit has set forth factors which may be considered in exercising this discretion: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake, (5) the possibility of a dispute concerning material facts,

1  (6) whether the default was due to excusable neglect, and (7) the
2  policy favoring decisions on the merits.  *Id.*

### 2. **Summary Judgment**

The Federal Rules of Civil Procedure provide for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

Rule 56 also allows a court to grant summary adjudication on part of a claim or defense.  *See* Fed. R. Civ. P. 56(a) ("A party seeking to recover upon a claim ... may ... move ... for a summary judgment in the party's favor upon all or any part thereof."); *see also Allstate Ins. Co. v. Madan*, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995); *France Stone Co., Inc. v. Charter Twp. of Monroe*, 790 F. Supp. 707, 710 (E.D. Mich. 1992).

The standard that applies to a motion for summary adjudication is the same as that which applies to a motion for summary judgment.  *See* Fed. R. Civ. P. 56(a), 56(c); *Mora v. ChemTronics*, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998).

///
///
///
///

7

1
2
3
4
5
> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.

6 *Celotex Corp. v. Catrett*, 477 U.S. at 323 (quoting Rule 56(c)).

7 If the moving party meets its initial responsibility, the
8 burden then shifts to the opposing party to establish that a
9 genuine issue as to any material fact actually does exist.
10 *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,
11 585-87 (1986); *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S.
12 253, 288-89 (1968).

13 In attempting to establish the existence of this factual
14 dispute, the opposing party must tender evidence of specific
15 facts in the form of affidavits, and/or admissible discovery
16 material, in support of its contention that the dispute exists.
17 Fed. R. Civ. P. 56(e). The opposing party must demonstrate that
18 the fact in contention is material, i.e., a fact that might
19 affect the outcome of the suit under the governing law, and that
20 the dispute is genuine, i.e., the evidence is such that a
21 reasonable jury could return a verdict for the nonmoving party.
22 *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 251-52
23 (1986); *Owens v. Local No. 169, Assoc. of W. Pulp and Paper*
24 *Workers*, 971 F.2d 347, 355 (9th Cir. 1987).
25 *///*
26 *///*
27 *///*
28 *///*

1 Stated another way, "before the evidence is left to the jury,
2 there is a preliminary question for the judge, not whether there
3 is literally no evidence, but whether there is any upon which a
4 jury could properly proceed to find a verdict for the party
5 producing it, upon whom the onus of proof is imposed." *Anderson*,
6 477 U.S. at 251 (quoting *Improvement Co. v. Munson*, 14 Wall. 442,
7 448, 20 L.Ed. 867 (1872)).  As the Supreme Court explained,
8 "[w]hen the moving party has carried its burden under Rule 56(c),
9 its opponent must do more than simply show that there is some
10 metaphysical doubt as to the material facts .... Where the record
11 taken as a whole could not lead a rational trier of fact to find
12 for the nonmoving party, there is no 'genuine issue for trial.'"
13 *Matsushita*, 475 U.S. at 586-87.
14      In resolving a summary judgment motion, the evidence of the
15 opposing party is to be believed, and all reasonable inferences
16 that may be drawn from the facts placed before the court must be
17 drawn in favor of the opposing party. *Anderson*, 477 U.S. at 255.
18 Nevertheless, inferences are not drawn out of the air, and it is
19 the opposing party's obligation to produce a factual predicate
20 from which the inference may be drawn. *Richards v. Nielsen*
21 *Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985),
22 *aff'd*, 810 F.2d 898 (9th Cir. 1987).
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

**ANALYSIS**

### 1. Default Judgment

In this case, the United States filed the Complaint on October 27, 2005, and sufficiently pled the case against all Defendants. Default was not entered against Defendants Talbot, Carpa, Bloomquist, and Graff until July 31, 2006. Since that time, the only response has been by Mr. Carpa. However, Mr. Carpa was informed on April 21, 2006, by Order of this Court, that appropriate counsel was needed to represent the Trust. Contrary to that Order, Mr. Carpa continued to respond without the assistance of counsel. The other Defendants have failed to respond entirely.

The United States alleged that the Trusts represented by Defendants Carpa, Talbot, and Bloomquist lack economic substance and are mere shams. The general rule "is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977). Given that the United States is not seeking monetary damages against the defaulting Defendants but rather seeking default judgment as to certain other facts set forth in the Complaint, the Court shall deem those facts true.

As noted above, the United States has alleged in its Complaint that the Ranch Holding Trust administered by Douglas Carpa and/or Robert Talbot and the Hidden Meadows Holding Trust, administered by Michael Bloomquist are sham trusts.

///

That allegation, as well as the remainder of the Complaint, remains unanswered.  In addition, the United States sought admissions that, likewise, have gone unanswered by Defendants. Pursuant to Federal Rule of Civil Procedure 36(a) "[e]ach matter of which an admission is requested...is admitted unless, within 30 days after service of the request, or within such shorter or longer time as the court may allow or as the parties may agree to in writing..."  No extension of time has been granted for Defendants to respond to the admissions.  Accordingly, pursuant to Rule 36, they are deemed admitted.  Given those admissions, the Court finds the Careys are the true and beneficial owners of the Bella Vista Property despite any purported interest held by the Hidden Meadows Holding Trust.  In addition, the Court finds the Careys use the Ranch Holding Trust and the Hidden Meadows Holding Trust as sham entities, including the Palo Cedro, Redding, and Bella Vista properties, in an attempt to shield those properties from the reach of their creditors.  Accordingly, the United States' Motion for Default Judgment is GRANTED.

### 2.  **Summary Judgment**

The Careys' tax liability has been previously adjudicated in both the United States Tax Court and United States Bankruptcy Court.  In *Residential Management Services Trust v. Commissioner*, the Tax Court found that the Careys had under-reported their tax income for 1995, including income which should have been attributed to the Careys but was instead attributed to a trust. 82 T.C.M (CCH) 874, 2001 WL 1360439 (U.S. Tax Ct. 2001).
///

11

Pursuant to this decision, the Tax Court entered an Order in the amount of $247,093 for tax deficiency and penalties for the 1995 tax year. In *Carey v. Commissioner*, the Tax Court upheld the IRS's proposed levy against the Careys for their 1996 tax assessment. 84 T.C.M. (CCH) 214, 2002 WL 1906445 (U.S. Tax Ct. 2002). In a second case entitled *Carey v. Commissioner*, the Tax Court found that the Careys had under-reported their income for 1997, and held that several of the Careys Trusts were shams for federal tax purposes. 86 T.C.M. (CCH) 420, 2003 WL 22233822 (U.S. Tax Ct. 2003). This led to an Order in the amount of $678,594.59 in tax deficiency and penalties for the 1997 tax year.

    The Careys filed for Chapter 7 bankruptcy on September 7, 2004. On November 18, 2004, the IRS filed Form 4340 Certificates which show tax assessments against the Careys totaling $6,473,034.57 for the years 1995-2000. The United States also filed Notices of Federal Tax Liens securing the Careys unpaid tax debts for the years 1995, 1996, 1998, 1999, and 2000. The Bankruptcy Court entered judgment that the Careys' tax liabilities for the years 1995 through 2000 were not subject to discharge under the bankruptcy proceedings. The only items discharged by the Bankruptcy Court were the penalties and the interest on the penalties for those years. However, all but the 1997 penalties were previously secured by federal tax liens and, therefore, were not discharged.

///
///
///

In the present matter, the United States has submitted the IRS Form 4340 Certificates showing the Careys' tax assessments. Such tax assessments are presumed to be correct as long as they have a minimum of factual support. *U.S. v. Stonehill*, 702 F.2d 1288, 1293 (9th Cir. 1983). The burden then shifts to the taxpayer to rebut the presumption of correctness. *Id.* At 1294. The taxpayer can do this by proving that the assessments are "arbitrary or erroneous." *Id.*

Here, the Careys have not put forth any evidence to indicate that the assessments are incorrect or invalid in any way. In fact, the Careys did not submit an Opposition to the United States' Motion for Summary Judgment. Additionally, the Careys failed to respond to any of the United States' requests for admissions. As noted above, when a party fails to respond to admission requests within thirty days, the requests are deemed admitted. Fed. R. Civ. Pro. 36(a). The requests here included admissions that: 1) the Careys are liable to the United States in the amount of $6,473,034.57; 2) that the Careys are the true beneficial owners of the Palo Cedro, Redding, and Bella Vista properties; 3) that the Careys transferred the Palo Cedro and Redding properties to the Ranch Holding Trust in order to hinder or delay payment of federal income taxes; and 4) that the Ranch Holding Trust and Hidden Meadows Holding Trust are sham trusts and are the nominee/alter egos of the Careys.

In light of the previous judgments against the Careys and the Careys' failure to put forth any evidence disputing the United States' allegations, the Motion for Summary Judgment is proper and, hereby, GRANTED.

**CONCLUSION**

For the reasons set forth above, the Court finds that the Ranch Holding Trust, the Hidden Meadows Holding Trust, and Pamela Graff have no interest in the Palo Cedro, Redding, and Bella Vista properties. Default judgment against Douglas Carpa and Robert Talbot (as trustees of the Ranch Holding Trust), Michael Bloomquist (as trustee of the Hidden Meadows Holding Trust), and Pamela Graff is hereby GRANTED. In addition, the Court finds Michael and Leona Carey are the true owners of the Palo Cedro, Redding, and Bella Vista properties making Defendant United States' Motion for Summary Judgment proper and, hereby, GRANTED.

IT IS SO ORDERED.

Dated: July 5, 2007

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE